## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF TEXAS BEAUMONT
## DIVISION

| | | |
|---|---|---|
| **AKHTAR HOUSING GROUP, LLC** | § | |
| **JEFF S. AKHTAR,  AND GURINDA** | § | |
| **AKHTAR** | § | |
| *Plaintiffs* | § | |
| **v.** | § | **C.A. No. 1:18-CV-321** |
| **GLENN JOHNSON THE MAYOR OF** | § | |
| **PORT NECHES, AND THE CITY OF** | § | |
| **PORT NECHES, TEXAS,** | § | |
| *Defendants* | § | |


### PLAINTIFF'S FIRST AMENDED COMPLAINT


COMES NOW, **AKHTAR HOUSING GROUP, LLC, JEFF S. AKHTAR**, **AND**

**GURINDA AKHTAR** and files this its First Amended Complaint against Glen Johnson, The

Mayor ("Mayor Johnson"), and the City of Port Neches, the Defendants and would

respectfully show the following:


### I. PRELIMINARY STATEMENT

On or about September 9, 2015   Plaintiff **AKHTAR HOUSING GROUP, LLC**

purchased land with an address of 3031 8th Street, Port Neches, Texas.    Plaintiff purchased

the property with the intent of constructing a Residential-Multi Family Apartment Complex.

The complex would be 4 buildings with building one to have 16 units, second building would

contain 42 units, third building would contain 33 unites and the fourth building would have

49  nits.   Total number of units would be 140.

The appropriate requests and applications were presented to the Zoning Board of Adjustments ("ZBA") requesting three variances.   The variances were approved on Monday November 9, 2015, with confirmation letter being mailed on November 12, 2015. Immediately upon being granted the three variances, Plaintiff was approached by a citizen of Port Neches, Texas who said that Plaintiff and his "kind" would not be allowed to build in Port Neches, Texas and that he knew the Mayor and would stop the construction. Shortly thereafter, the three variances were withdrawn by Mayor Johnson and Mayor Johnson filed a lawsuit against the ZBA.   Plaintiff attempted to intervene and was denied. This lawsuit is being filed for discrimination.

After the first acceptance of the variance, then subsequent denial, Plaintiff submitted a second application for a variance request on May 17, 2017 in hopes that the project could move forward.   Plaintiff's second requested variance for the apartment construction at address 3031 8th Street, Port Neches, Texas, was for the construction of an apartment complex consisting of a two-story building, with twelve to sixteen units under one roof, for a total of 106 units. The second request was not to increase the number of units beyond the allowed 106 units as described in the City ordinance.   However, due to the electrical wiring that runs on 1/3 of the property, the Plaintiff adjusted the request to increase from 12 units to 16 units under one roof.   This will still equal 106 units, which meets the city ordinance, and accommodate for the limited spacing due to the electrical wiring hardship. The request was not for the original request of three-story unit.   Plaintiff adjusted it to request an increase from twelve units under one roof to sixteen units under one roof while still complying with the total amount of units allowed statute. The land that will be used for the complex is limited in space due to electrical wires running on 1/3 of the property.    This requested variance was also denied though there were no changes to the total number of units allowed by statute.

## II. <u>JURISDICTION</u>

1.      This Complaint arises pursuant to the 42 U.S. Code §1983 and the Fifth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution.   This court has jurisdiction over Plaintiffs' claim under 28 U.S.C. §1331 (federal question) and under 28 U.S.C. §1343(3) (civil rights).  This court further has jurisdiction over Plaintiffs' state law claims under 28 U.S.C. 1367 (supplemental jurisdiction) as those claims from part of the same case or controversy under Article III of the United States Constitution.

2.      The Court also has jurisdiction under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.

3.       The Court also has jurisdiction under 18 U.S.C. § 245 makes it unlawful to willfully injure, intimidate or interfere with any person, or to attempt to do so, by force or threat of force, because of that other person's race, color, religion or national origin and because of his/her activity

## II. <u>PARTIES</u>

4.      Plaintiff, **JEFF S. AKHTAR and GURINDA AKHTAR**, are United States citizen who resides in Orange, Texas.

5.      Plaintiff, **AKHTAR HOUSING GROUP, LLC**, is a Limited Liability Corporation authorized to do business in the State of Texas. It is the owner of the property made the basis of this lawsuit and located at 3031 8th Street, Port Neches, Texas.

*First Amended Petition*

6.    Defendant, **GLEN JOHNSON,** is the Mayor of Port Neches and may be served at his office located at 1005 Merriman Street, Port Neches, Texas 77651.

7.    Defendant, **CITY OF PORT NECHES,** and can be served at 1005 Merriman Street, Port Neches, Texas 77651.

## III. <u>FACTS</u>

<u>**Nature of the Action:**</u>

8..  This suit is regarding the discriminatory conduct of Defendants in their capacities as set forth herein by rescinding an approval that was previously granted by the ZBA to Plaintiff **AKHTAR HOUSING GROUP, LLC** to construct a 140-unit apartment complex consisting of three stories and to be placed on the property with the legal description of PT. of Lot 5, Block 14,  Range R, Lands of Port Arthur Land Company, Jefferson County, Texas, with a physical address of 3031 8th Street, Port Neches, Texas.

<u>**Granting of Three Zoning Variances**</u>

9.    On September 9, 2015 AKHTAR HOUSING GROUP, LLC purchased the property with the legal description of PT. of Lot 5, Block 14, Range R, Lands of Port Arthur Land Company, Jefferson County, Texas, with a physical address of 3031 8th Street, Port Neches, Texas.

10.    This property was purchased as a commercial property in which Plaintiffs could construct a 140-unit apartment complex in the City of Port Neches, where Plaintiffs already owned an apartment complex, having purchase the existing complex and remodeled the same.

11.     Plaintiffs consulted with various offers of the City of Port Neches as to the feasibility of constructing such a project on a large vacant piece of property located in the City of Port Neches.   The ZBA assured Plaintiffs that such property was properly zoned for multifamily housing and assured that the building permits and variances would not be a problem.  In fact, it was a City of Port Neches employee that suggested constructing a 140-unit complex.  Plaintiffs submitted a request for three Zoning Variances for a three story, 140-unit complex.

12.    The request for 140-unit apartment complex consisting of three stories was critical to the project in that the property which was purchased by Plaintiffs.     The surrounding area to the complex was unsightly, including a mobile home park of which the complex would shield from view.   After having received various assurances from the City officials, Plaintiffs learned that there was an easement across the property taking away a 50' strip of the property on which no construction could be done.  Lack of density to a two-story structure would in all likelihood make the project unfeasible as to a cash flow to service the investment made in the vacant property.

13.     The configuration of the property with easements would have made it virtually impossible for Plaintiffs to construct a property in keeping with the quality of the surrounding residences and avoid accusations of creating an unsightly commercial venture within the city limits of the City of Port Neches.

14.    After filing the necessary documents with the ZBA of the City of Port Neches requesting a variance, Plaintiffs did as instructed by various members of the ZBA to consult with other officers of the City of such as the City Fire Chief and others as to whether or not construction of the apartment complex as described by him was feasible and proper.   After

*First Amended Petition*

having multiple meetings with the ZBA, including a hearing open to the public, the zoning variances were approved.   (See Exhibits A-C) The ZBA board had been handling zoning for the City or Port Neches for many years and were well versed and experienced on their approvals pursuant to the codes.

15.    According to the rules for the zoning ZBA the neighboring land owners were notified of the hearing on or about November 9, 2016 and there were no objections, no protests and no petitions signed and presented in opposition to Plaintiffs' zoning requests, including from the Mayor, City Counsel or any individual resident.    The ZBA granted the variances at the noticed meeting after taking testimony, allowing the construction of the three-story apartment complex, with 140 units.

16.    After the approval of November 9, 2016, the action of the ZBA became public and the above-named Defendants contacted the ZBA in an effort to rescind the variances granted to the Plaintiffs.  Immediately following the hearing on November 9, 2016 of the ZBA.

17.    The Defendants convened in a session to consider the matter of the variance which had already been granted to Plaintiffs and at such hearing numerous protestors gather, some of whom communicated to Plaintiffs that they would stop them from building the apartment complex reiterating that they did not want Muslims in their community. Plaintiff Jeff Akhtar and his wife were verbally assaulted outside the meeting with threats that "their kind" would not be allowed to build the apartment complex and that "no Muslim" would own any property in Port Neches.  The threats continued with statements that these individuals knew the Mayor and would get him to stop this project.    Plaintiffs' remained silent that night as they had been granted their variance for the project. However, the next day,

the Plaintiff did notify the City in detail of the discrimination for being Muslim and that person knows the Mayor and all  that took place against them the night before.  They had complied with all request made by the ZBA prior to receiving the approval.   It was shortly after this encounter that steps were taken to rescind the approval by the ZBA.

18.    The threats were acted upon by the Mayor, City Counsel as is seen in the filing of the petition to rescind the approved variances granted to Plaintiffs.  Shortly after the meeting where Plaintiffs were attached merely for being Muslim, the Defendants, City Counsel, took action to file suit against the ZBA in order to attempt to set aside the action of the board which was lawfully done and pursuant to the zoning ordinances.  This lawsuit was precipitated by the desire not to have "Muslims" in their community.    Plaintiffs attempted to intervene in the lawsuit but due to lack of standing their complaint was dismissed.

19.    Plaintiffs have learned that after their zoning variance was granted, the board members, including Corey Belanger received messages about the decision, including concerns about property values, but not due to the project.    The pressure from the calls and complaints by the citizens who threatened the reversal of variance based upon the race and religion of Plaintiffs and received by the board members, led the City to ultimately rescind of the variance, and it was not due to any lawsuit filed by the City against the previous zoning board.   There were complaints that the Plaintiffs' religion and/or nationality were not welcome. (See Exhibit "E")  The board members felt they made the right decision but were being pressured to rescind the decision. (See Exhibits "A"-"G")

20.    The zoning request was approved because he met the requirements.  (See Exhibit "D")  Plaintiffs did everything they needed to comply with the requirements of the

zoning board including getting from the Port Neches Fire Chief a letter of approval.  (See Exhibit

21.     The ZBA issued the variances in accordance with the requisite rules, laws and regulations.     The Defendants are acting with maliciously, and with the intent to harm Plaintiffs.     There are no grounds upon which to deny the project approved.    The Defendants have attempted to propose compromises, but the loss of income to the Plaintiffs will be substantial.   Plaintiffs purchased the property for an excessive price of $800,000.00.

22.     Plaintiffs have performed all conditions precedent and are ready, willing, and able to perform each and every obligation imposed by the zoning variances and to perform any equitable acts as this Honorable Court deems necessary.

## IV.  <u>CAUSES OF ACTION</u>

A.  <u>*Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq*</u>

23.     Plaintiffs incorporate all of the previous paragraphs as if set forth fully herein.

24.     The Defendant's conduct as alleged at length herein constitutes discrimination based on race, and religion, in violation of Title VII. The stated reasons for the Defendants' conduct were not the true reasons, but instead were pretext to hide the Defendants' discriminatory animus.

25.     It is a federal crime to injure, threaten, or intimidate people because of their religion in order to interfere with their exercise of federally guaranteed rights, such as the purchase or rental of a home, patronage of public accommodations such as restaurants and theaters, use of public parks and other facilities, attendance at a school or college, or participation in government programs. Defendants are doing just this by the actions taken

in filing the lawsuit and having the granted variances rescinded for the three story 140 unit apartment complex.

B. *The Civil Rights Act codified at 42 U.S.C. §1983*

26.    Plaintiffs incorporate all of the previous paragraphs as if set forth fully herein.

27.    *The Civil Rights Act codified at 42 U.S.C. §1983:*

*Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the parties injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. §1983*

28.    Plaintiffs allege that Defendants, jointly and/or severally, deprived Plaintiffs' of their Fifth Amendment rights, and those rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the Constitution as incorporated and applied to the states through the Fourteenth amendment, Defendants violated Plaintiffs' rights in the following ways:

a.    By using reversing a variance approval that the Port Neches Zoning Board and not following the proper procedure but rather, by suing the Port Neches Zoning Board, forcing them to reverse the decision and deny the variance, after threats were made to Plaintiffs that the Mayor would do just what he did because "they did not want their kind".

b.    By failing to protect the rights of Plaintiffs against discrimination by threats of others regarding to rescind the variance based upon religious discrimination and then rescinding the variance based upon religious discrimination.

c.    By failing to protect the rights of Plaintiffs and rejection a second variance request that does not ask for additional stories but only additional units.

**(1) PLAINTIFFS FIRST CLAIM: 42 U.S.C. § 1983 – MAYOR LIABILITY**

29.    Plaintiffs incorporate all of the previous paragraphs as if set forth fully herein.

30.    Plaintiffs bring a claim against the Mayor of the City of Port Neches,  in his official capacity, pursuant to 42 U.S.C. §1983 and for punitive damages.

31.    At all times material herein, Mayor **GLEN JOHNSON,** (hereinafter "Mayor") **was** acting under color of state law as an agent and employee of Defendant, the City of Port Neches ("City").   Defendant acted in his official capacity when he filed a lawsuit against the Zoning Board based upon the approval of the variance grated to the Plaintiffs for the construction of the three-story apartment complex.     The Mayor sought to reverse the decision of the zoning board through the lawsuit and threats rather than following the proper administrative procedures.   Additionally, it is clear after the final meeting which drew a large crowd, that the variances were be attacked based upon religious and the nationality of the Plaintiffs and not on viable grounds.

32.    There was no reason to file the lawsuit against the zoning board to reverse the decision to grant the Plaintiffs' the zoning variance for their apartment complex project when administrative remedies were available.    The zoning board properly granted the variance, but after the public hearing granting said variance, Plaintiffs were verbally assaulted by citizens who threatened the exact actions to be taken by the Mayor that were actually taken by the Mayor.    Further, the Plaintiffs were not able to intervene into the

lawsuit filed by the City, but rather were forced out of the lawsuit; therefore, their position and the facts were never truly presented as the zoning board let it go.  (See Exhibits "B"-"E")

33.    Therefore, by using subjectively and objectively unreasonable actions in filing a lawsuit against the Zoning Board to reverse the zoning variance, the Mayor violated the Plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution and caused and continues to cause monetary damages to Plaintiffs.

### (2) PLAINTIFFS 'SECOND CLAIM: 42 U.S.C. § 1983 – MUNICIPAL LIABILITY

34.    Plaintiffs incorporate all of the previous paragraphs as if set forth fully herein.

35.     Plaintiffs constitutional rights were violated when the Mayor sued the Zoning Board over the variance granted to the Plaintiffs instead of following the proper administrative procedures.

36.    The City of Port Neches is also liable under 42 U.S.C. § 1983 for failing to ensure that the proper procedures were followed if there was an objection to the variance. Complaints were apparently made based upon Plaintiffs' religion and then a lawsuit was filed against the zoning board, forcing their removal.

37.    Additionally, municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to policy, procedure, practice, or custom of the municipality.   Even if the City's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy.  See _Bd. Of County Commr's of Bryan County v. Brown_, 520 U.S. 397, 404(1997).

38.    In the present case, the City's formal and informal actions in overlooking, hiding and/or tacitly encouraging the mayor's misconduct through filing lawsuits to remove

the zoning board based upon the variance granted to Plaintiffs and rescind the variance. The proper administrative procedures were not followed but rather the entire zoning board was threatened and sued based upon one variance.    These actions cause financial harm to the Plaintiffs who have been unable to construct their apartment complex as not only the first two variances were denied, but the third variance requesting additional units in the building was also denied without any cause.

39.    Thus, the City's failure to check the actions of the mayor in filing the lawsuit is a direct cause of the rescission of the granted variance, causing the Plaintiffs' financial damage and harm.    Plaintiffs were deprived of their constitutional rights of due process under the Fifth and Fourteenth Amendments to the United States Constitution and the Texas Constitution as applied through 42 U.S.C. Section 1983.

*C. Actual Damages.*

40.    Plaintiffs incorporate all of the previous paragraphs as if set forth fully herein.

41.    The actions of Defendants have cost Plaintiffs actual damages in excess of $125,000.00 as the multi-family apartment complex has not yet been able to be  constructed and therefore the income that said complex would produce is not being received.    The average rent would be approximately $900, for 140 units would be $160,000 per month, for each month that the complex is not able to be constructed.    This amount is increasing daily as the construction project cannot be started.

42.    Defendants should be ordered to pay all actual damages incurred as a result of their actions in stopping and delaying the construction.

**V. <u>ATTORNEY'S FEES</u>**

Plaintiffs are entitled to recover attorney's fees and costs as required by the Civil Rights Attorney Fees Award Act of 1976. 49 U.S.C. § 1988.   Plaintiffs thereby request that the Court and jury award their attorneys' fees and expenses.

## VI.  <u>PRAYER</u>

Plaintiffs pray that Defendants be cited to appear and answer the allegations contained in this Petition and for actual damages against Defendant in an amount determined by a jury, punitive damages, pre and post judgment interest, recover costs of suit, attorney's fees and be awarded other and further relief that is necessary and property in the premises.

Respectfully submitted,

**COLLEEN M. McCLURE**
**ATTORNEY AT LAW**

By:  */s/Colleen M. McClure*
COLLEEN M. MCCLURE
Texas bar No. 24012121
4201 Cypress Creek Parkway, Suite 565
Houston, Texas, 77068
Tel. (281) 440-1625
Fax. (281) 946-5627
colleen.mcclure@att.net

ATTORNEY FOR PLAINTIFFS

*First Amended Petition*

## <u>CERTIFICATE OF SERVICE AND CONFERENCE</u>

I certify that September 20, 2018 a true and correct copy of the above motion was served to opposing counsel by efiling.   A true and correct copy of the foregoing was emailed to opposing counsel for comment and if he was in agreement to the same.


*/s/ Colleen M. McClure*
Colleen M. McClure

<u>Counsel for Defendants</u>:
Frank D. Calvert
Texas Bar No. 03667700
2615 Calder Avenue, Suite 1070
Beaumont, Texas 77702
Tel. (409) 832-8885
fcalvert@calvert-eaves.com
F. Blair Clark
Texas Bar No. 04316560
fbclarke@calvert-eaves.com
Lance P Bradley
Texas State Bar No.: 02826650
lbradley@bradlaw.net
Glenn H. Steele, Jr.
Texas Bar No. 19099800
pstelle@bradlawnet
Bradley, Steele & Pierce,LLP
3120 Central Mall Drive
Port Arthur, Texas 77642
Tel: 409-724-6644
Fax: 409-724-7585