## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS BEAUMONT DIVISION

| | | |
|---|---|---|
| AKHTAR HOUSING GROUP, LLC | § | |
| JEFF S. AKHTAR,  AND GURINDA | § | |
| AKHTAR | § | |
| *Plaintiff*s | § | |
| v. | § | C.A. No. 1:18-CV-321 |
| GLENN JOHNSON THE MAYOR OF | § | |
| PORT NECHES, AND THE CITY OF | § | |
| PORT NECHES, TEXAS, | § | |
| *Defendants* | § | |

---

### PLAINTIFFS' FRCP 56 MOTION FOR SUMMARY JUDGMENT

---

COMES NOW, **AKHTAR HOUSING GROUP, LLC, JEFF S. AKHTAR**, **AND GURINDA AKHTAR** and files this their FRCP 56 Motion for Summary Judgment on Pleadings pursuant to FRCP 12(c)  and would respectfully show the following:

### I. NATURE OF THE PROCEEDINGS

1.     On September 9th, 2015, Plaintiffs purchased a tract of land in Port Neches, Texas, zoned as "multifamily dwellings."   Plaintiffs requested variances on September 16, 2015 in order to make the project feasible due to the restrictions placed upon the land with utility easements, which prohibited construction of buildings upon the easement. These variances, which requested to make the complex into a three story to include additional units, were ultimately granted after several meetings and reviews that included additions, changes and corrections to the proposed construction project.  The zoning board for Port

Neches thoroughly reviewed the requested variances and ensured that the requests were in the best interest of the city. There was a public hearing with the board on November 9th, 2015, where the public complaints and/or opposition to the variances would be addressed. Several residents of Port Neches attended as well as residents from Nederland. After the meeting, and the granting of the variances, an elderly gentleman threatened the Plaintiffs that he knew the Mayor and he would stop the project, clearly stating that he did not want "their" (Plaintiffs') kind, specifically stating Pakistanis and Muslims, and that they need to go back to where they came from.

2.       Within ten (10) days of the meeting, the Defendants sued the zoning board, paying for the member's defense, seeking to have the variances rescinded.    During the course of the lawsuit, Plaintiffs attempted to intervene in the lawsuit seeking to rescind the variances, since they would be the only ones directly impacted by the rescission of the variances.    The Defendants objected to their intervention and the Plaintiffs were not allowed to intervene.       During the proceedings against the zoning board by Defendants, there were issues in representation of the zoning board.    Initially, the zoning board's attorney was being paid by the City of Port Neches, but then during the early course of the litigation, the City stopped paying for the attorney.    At that time, the zoning board did not have any legal representation.    Further, the members of the zoning board that granted the Plaintiffs' variances were forced off their positions on the zoning board.    By the time the City of Port Neches stopped paying the attorney's fees for the zoning board members, the named board members, who granted the variances, were no longer zoning board members. As a result, they (board members) were not receiving any notifications of the lawsuit.

Defendants filed a motion for summary judgment which went unanswered and received a judgment declaring the variances to be "illegal".   There was no one fighting the Writ of Certiorari on behalf of the zoning board members.

3. The  Plaintiffs filed their initial lawsuit, but as they choose to try a second variance request, decided to nonsuit said lawsuit.  However, after filing the second variance request,  removing the third story as requested in the initial variances that were granted, it too  was rejected without any justification as the variances requested were based upon hardship due to the easements running across the property.   Not one of the former zoning board members who granted the original variances requested were on the board at the time of the second variance request submission, as through one avenue or another they were removed, resigned or did not seek reappointment in said position.  Plaintiffs then filed their Original Petition on July 6, 2018 [Docket No. 1].

4.   Defendants filed Motion to Dismiss [Docket No.3] on August 20. 2018.   Plaintiffs' filed their First Amended Petition on September 20, 2018 [Docket No. 7].      The parties have been engaging in discovery and on March 29, 2019 Defendants filed a Motion for Judgment on the Pleadings [Docket No. 25].      Plaintiffs filed a Motion for Leave to file a Second Amended Petition [Docket No. 29 and 32] to address the issues in the Defendants claims in their Motion for Judgment on the Pleadings [Docket No. 25].       Defendants filed their Motion for Summary Judgment on  May 20, 2019. [Docket No. 35]

## II. *FACTUAL ALLEGATIONS*

4.  Plaintiffs have filed a Second Amended Petition [Docket No. 32] containing the factual allegations to support the claims of discrimination, including the affidavits and statements of the board members who approved the variance, but then the board members

*FRCP 56 Motion for Judgment*

3 | P a g e

were sued due to threats from the public due to the religious preference and national origin of the Plaintiffs that were filed with the First amended Petition and incorporated into the Second Amended Petition  (See Docket NO. 32, with attached exhibits)  and the undisputed facts as agreed to by the Plaintiffs are as follows:

a.    On September 9, 2015 AKHTAR HOUSING GROUP, LLC purchased the property with the legal description of PT. of Lot 5, Block 14, Range R, Lands of Port Arthur Land Company, Jefferson County, Texas, with a physical address of 3031 8th Street, Port Neches, Texas. Plaintiffs purchased the property for an excessive price of $800,000.00.

b.    This property was purchased as a commercial property, zoned as such, in which Plaintiffs could construct a 140-unit apartment complex in the City of Port Neches, where Plaintiffs already owned an apartment complex, having purchase the existing complex and remodeled the same.

c.   Plaintiffs consulted with zoning board and with the Fire Chief of the City of Port Neches as to the feasibility of constructing such a project on a large vacant piece of property located in the City of Port Neches.   These officials including the members of the zoning board, namely Corey Bellinger Chairman, James Ware, Boyd Parks, Gay Stretcher, Sam Loyocano, and Charles Bales.  These named members of the zoning board assured Plaintiffs that such property was properly zoned for multifamily housing and assured that the building permits and variances would not be a problem.  In fact, it was a City of Port Neches

employee that suggested constructing a 140-unit complex. Plaintiffs submitted a request for three Zoning Variances for a three story, 140-unit complex.

d.   The zoning variances requested by Plaintiff to create a third story addition which would add additional units to the complex, was critical to the construction project, due to the additions and upgrades the zoning board had requested including a pool, upgraded stone elevation to the buildings, turn access on the adjoining street and gym.  (See Exhibits A Deposition of Corey Bellinger pages 9-10 and Exhibit C Deposition of James Ware pages 8-10) The surrounding area to the complex was unsightly, including a mobile home park of which the complex would shield from view. After having received various assurances from the City officials, Plaintiffs learned that there was an easement across the property taking away a 50' strip of the property on which no construction could be done, which affected available land use for the buildings to be constructed.   Along with the "extras" the zoning board requested regarding the turn access, finer materials for outside of the complex, exercise room and pool.  (See Exhibits A Deposition of Corey Bellinger pages 9-10 and Exhibit C Deposition of James Ware pages 8-10) Lack of density to a two-story structure would likely make the project unfeasible as to cash flow.

e. The configuration of the property with easements would have made it virtually impossible Plaintiffs to construct a complex, keeping with the quality of the surrounding residences, avoiding accusations of creating an unsightly commercial venture within the city limits of the City of Port Neches and comply

with the requirements of the ZBA. (See Exhibits A Deposition of Corey Bellinger pages 9-10 and Exhibit C Deposition of James Ware pages 8-10)

f.   After filing the necessary documents with the ZBA of the City of Port Neches requesting a variance, Plaintiffs did as instructed by various members of the ZBA to consult with other officers of the City, such as the City Fire Chief and others as to whether or not construction of the apartment complex as described by him was feasible and proper. Also, that there would be no issue for the fire department in responding to a fire on the third floor of the proposed complex. After having multiple meetings with the ZBA, including a hearing open to the public, the zoning variances were approved.   (See Exhibits A-C attached to First Amended Petition Docket No. 7)

g.      The ZBA board had been handling zoning for the City or Port Neches for many years and were well versed and experienced on their approvals pursuant to the codes.  The City Manager, Andre Wimer, was present at the zoning board meetings for the Plaintiffs variances and at no time voiced any objection.  Andrew Wimer was also present when the variances were granted, but again did not voice any objection.  Neither the City of Port Neches Mayor or City Council at any time objected to the variance prior to the approval, nor during the process of obtaining approval, but only objected after threats were made to the Plaintiffs about their ethnicity and religion.

f. According to the rules for the zoning ZBA the neighboring landowners were notified of the public hearing regarding Plaintiffs variances. At that public

hearing on November 9, 2015 there were no objections from the City building inspector, the City manager or the City Fire Chief.  The Mayor nor City Counsel were present and did not have any objections.  There were few objections by residents that were from nearby cities in opposition to zoning requests. Residents were contesting the construction of the complex, not understanding that the land was zoned for multifamily buildings. The public was not aware that the land was zoned for multifamily dwellings and the issues presented by the public were with the construction of the complex and not the "additional third story".  The ZBA granted the variances at the noticed meeting after taking testimony, allowing the construction of the three-story apartment complex, with 140 units, after listening to the complaints by citizens of Port Neches.

g.      Concluding the meeting on November 9th, 2015, one elderly gentleman threatened that he would stop Plaintiffs from building the apartment complex stating that they did not want Pakistanis and Muslims in their community. He further stated he knew the Mayor and would get him to stop the construction. The next day, November 10th, 2015, the Plaintiffs did notify the City in detail of the discrimination for their ethnicity, Pakistanis and alleged religion Muslim.

h.      On November 12, 2015, the City Counsel at their regular meeting heard an item regarding a variance on a matter unrelated to the Plaintiff.   At this meeting the proper procedural rules were followed, including the Pledge of Allegiance and invocation. All parties regarding the variance were allowed to

talk and discuss the matter freely. Plaintiffs variances were not discussed nor were challenged at the regular City Council meeting.

i. On Friday, November 13th, 2015, Defendant announced they would be holding a special emergency meeting on the next working day, which fell on Monday, November 16, 2015. Plaintiff met with City Manager Andre Wimer, who informed Plaintiff to be prepared to answer anything Mayor may ask.

j. The Defendants convened in a session on Monday, November 16, 2015 to consider the matter of the variance which had already been granted to the Plaintiffs. During said meeting the Plaintiff was not allowed to intervene even though the matter pertained to his variances.

k.      After the approval of November 9, 2015, the action of the ZBA became public and the above-named Defendants contacted the ZBA in an effort to rescind the variances granted to the Plaintiffs.   Immediately following the hearing on November 9, 2015 of the ZBA.  Within ten (10) days of the approval, a lawsuit was filed on November 19, 2015.    The ZBA was not given the opportunity to reconvene and re-evaluate their decision. (See Exhibit "A" pages 16-19)

l.      The threats made by the elderly citizen were acted upon by the Mayor and City Council, as is evidenced by the fact within ten (10) days of the threat being made on November 9, 2019, as is seen in the filing of the a petition was filed in Jefferson County Court at Law No. 1 under cause number 0128630 against the zoning board alleging that there were not proper and requesting a

rescission of the approved variances granted to Plaintiffs through the Writ of Certiorari filed on November 19, 2015. This is the first time since the zoning board was put into place in approximately 2007 that the zoning board was sued over a granted variance.

m.      The zoning board had counsel appointed and paid for by the City of Port Neches. The zoning board was approached by the City Manager, Andre Wimer who informed the members of the lawsuit that their defense would be paid for by the City.   (See Exhibits A and C)   At some after the petition was served, the assigned counsel resigned, leaving the board without representation for the final six (6) or more months of the lawsuit. There is no notice in the public records that the individual board members were notified of the final judgment and the order stating that the variance was illegal. Nobody fought the lawsuit regarding the variance.   To have such a ruling would mean that "all" variance granted by the board were illegal and should be addressed.

n.      Plaintiffs attempted to intervene in the lawsuit but based on a ruling of lack of standing their intervention complaint was dismissed. Plaintiffs were not allowed to intervene even though they would be the only ones impacted by the lawsuit.   Plaintiffs had no voice in the lower court case.

o.      Plaintiffs have learned that after their zoning variance was granted, the board members, including Corey Belanger received messages about the decision, including concerns about property values and about constructing an

apartment complex on the land.   That was a non-issue as the land was zoned for multifamily and Plaintiffs needed no variance to build on the land.     The pressure from the calls and complaints by the citizens who threatened the reversal of variance based upon the fact that Plaintiffs were from Pakistan and a claim that they were Muslims, as were   received by the zoning board members were also received by Mayor Johnson of Port Neches.   Within ten (10) days after the threat, on November 19, 2015  the City acted upon the threat by filing a lawsuit for Writ of Certiorari against the zoning board.  Which ultimately led the City of Port Neches, City Council and Mayor to receive an unopposed judgment (as the zoning board did not have representation or notice of the motions and hearings) declaring the variance to be illegal.  (See Exhibits "A" and "C")     The board members felt they made the right decision but were being pressured to rescind the decision. (See Exhibits "A"-"G" attached here and to First Amended Petition Docket No. 7)     At no time, even though Plaintiffs attempted, were they consulted or notified of the decision which impacted their business, finances and reputation.   In the years of the zoning board's existence and variances granted, there were no other lawsuits against the zoning board and no other request to withdraw a granted variance until this one was ever even addressed by the Mayor or City Council.

p.     The zoning request was approved because Plaintiff not only met the requirements but also complied with the additional requirements of the zoning board of which the zoning board enacted and requested as in the best

interest of the City of Port Neches.  (See Exhibit "A"  and "C")  Plaintiffs did everything they needed to comply with the requirements of the zoning board including getting from the Port Neches Fire Chief a letter of approval.  (See Exhibit "D" attached to the First Amended Petition and Exhibits "A" and "C" attached hereto)

q.      The ZBA issued the variances in accordance with the requisite rules, laws and regulations.   The request was due to hardship based upon the utility easement, then the additional requirements placed upon the Plaintiffs to obtain the variances.

## *MOTION FOR SUMMARY JUDGMENT*

Plaintiffs will show that the actions of the Defendants in filing a lawsuit against the Port Neches Zoning Board within ten (10) days of the racial threat being made, without going to the Port Neches Zoning Board to reexamine their decision, refusing to allow Plaintiffs to participate in review of the grievances prior to the filing of the lawsuit against the zoning board, then either refusing to renew their term or forcing them off the board, obtained a judgment when the zoning board members were unaware of the proceedings not only in violation of the board members due process rights, but also against Plaintiffs' due process rights.

## *Summary Judgment Standard*

Summary judgment is appropriate only if no genuine issue of material fact exists on the record and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The standard for determining whether summary judgment is appropriate is "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." _Amway Distributors Benefits Ass'n v. Northfield Ins. Co._, 323 F.3d 386, 390 (6th Cir. 2003) (quoting _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 251-52 (1986)).  The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  _Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp._, 475 U.S. 574, 587 (1986); _Redding v. St. Eward_, 241 F.3d 530, 532 (6th Cir. 2001).  However, the non-movant must present more than a "scintilla" of evidence to defeat a summary judgment motion, he must present contradictory evidence of a fact material to the claims at issue.  _Anderson_, 477 U.S. at 251-52.  A party is entitled to summary judgment only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Only disputes over

---

1The Fifth Circuit has made clear that "a facial challenge to the constitutionality of a statute presents a pure question of law." Ctr. for Individual Freedom v. Carmouche, 449 F.3d 655, 662 (5th Cir. 2006). See also Gable v. Patton, 142 F.3d 940, 944 (6th Cir. 1998) ("Because the four provisions are challenged with regard to facial constitutionality, thus implicating only issues of law, neither Plaintiff nor Defendants contest the appropriateness of summary judgment."); _Gen. Offshore Corp. v. Farrelly_, 743 F. Supp. 1177, 1188 (D.V.I. 1990) ("By definition, a facial challenge is made in a factual vacuum; the court's job is merely to determine whether the statute, however applied, is constitutional."). Furthermore, as Plaintiffs themselves recognize, a facial constitutional challenge to Section 6001 is governed by rational basis review. See, e.g., Heller v. Doe, 509 U.S. 312, 319-20 (1993); Energy Mgmt. Corp. v. City of Shreveport, 467 F.3d 471, 481 (5th Cir. 2006); see, e.g., Compl. ¶¶ 47, 54, 57; Pls.' Prelim. Inj. Mot. 3, 6, 9.  The Supreme Court has made it abundantly clear that a legislative choice subject to the rational basis test "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data," _FCC v. Beach Commc'ns_, 508 U.S. 307, 315 (1993), and that the Government, therefore, has "no obligation to produce evidence to sustain the rationality of a statutory classification," Heller, 509 U.S. at 320. Accordingly, there are no issues of fact to be decided, and no need for a trial, in order for the Court to determine whether Congress had a rational basis for enacting Section 6001. 6 Although this Court should dismiss Plaintiffs' complaint in its entirety pursuant to Rule 12 because it raises purely legally issues, Defendant offers these legislative facts in the event the Court's review reaches the summary judgment stage.  Stern v. Tarrant Cnty. Hosp. Dist., 778 F.2d 1052, 1060 (5th Cir. 1985) (en banc) ("The general distinction between legislative and adjudicative facts is nevertheless important because it helps to show why the district court ought to have asked only whether there was any conceivable basis for the . . . legislative judgment regarding the import of the differences between the two . . . programs.  A factual conclusion by the district court, based on conflicting evidence about an historical fact, would be binding in this court. But such a factual conclusion could not be used to displace a legislative judgment and therefore could not be a sufficient basis for declaring the [agency] action unconstitutional.").

---

facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted." 1 _Anderson v. Liberty Lobby, Inc_., 477 U.S. 242, 248 (1986). "For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."   _Essex Ins. Co. v. McFadden_, No. 6:09-cv-00193, 2010 WL 2246293, at *3 (E.D. Tex. June 3, 2010).

## _ARGUMENTS AND AUTHORITIES_

### I.        Defendants violated Plaintiff's rights pursuant to
### 42 U.S.C. Section 1983

This case is a  Civil Action for Deprivation of Rights Act pursuant to Section 1983 as against the City of Port Neches and Mayor Glenn Johnson. The purpose of the Act is to provide a private remedy for violations of Federal Law. Section 1983 states:

"Every person who under color of any statute, ordinance, regulation

custom or usage of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any

rights, privileges or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity,

or other proper proceeding for redress, except that in any action

brought against a judicial officer for an act or omission taken in

such officer's judicial capacity, injunctive relief shall not be granted

unless a declaratory decree was violated, or declaratory relief was

unavailable.  For the purposes of this section, any Act of Congress

applicable exclusively to the District of Columbia shall be considered

to be a statute of the District of Columbia."

The Supreme Court of the United States articulated three purposes that support liability of the statute in _Monroe v. Pape_, 365 U.S. 167 (1961).     Due to this decision, Section 1983 can be applied to the case hand as follows:

1. To override certain kinds of state laws.

2. To provide a remedy where state law was inadequate and

3.  To provide a Federal remedy where the state remedy, though  adequate in theory, was not available in practice.

4.   To permit private litigants a Federal court remedy as a first resort

5.   rather than having to first bring suit in state court.

The Supreme Court in **_Monell v. Department of Social Services_**, 436 U.S. 658 (1978) has provided an interpretation of Section 1983 in which liability may be found where government officials act _outside_ the scope of the authority granted to them by state law. There is no contest that Section 1983 clearly provides that only persons under the statute are subject to liability, not the state.    Plaintiffs are pursuing their claims against a government official acting in his or her official capacity represents nothing more than a suit against the Federal, state or local government entity itself.  Individual employees of any Federal, state or local government _may be_ sued for damages, as we are allowed to do in this

case.  (*See*, ***Monell v. Department of Social Services***, 436 U.S. 658 (1978),  wherein the Supreme Court overruled *Monroe v. Pape* 365 U.S. 167 (1961), by ruling that a local government is defined as  a "person" subject to suit under Section 1983 of Title 42 of the United States Code, which is an civil action for deprivation of rights as in the lawsuit filed by Plaintiffs.  The Supreme Court clearly overruled that portion of Monroe which had excluded municipalities from the scope of section 1983, and held that henceforth municipalities do not enjoy absolute immunity from section 1983 liability.)    Plaintiffs have shown a  clear and supported causal connection  between the defendants' actions in acting upon the threat made against Plaintiffs by the citizen after the public meeting with the zoning board on November 9, 2015 and the harm that results from said actions, namely the rescission of the variances causing financial harm to Plaintiffs in having them rescinded, declared illegal and stopping the construction of the multifamily units planned and approved.  It is clear that there is no  *state of mind*  or  *intent* requirement. The only requirement is that the action taken by the government causes harm to the party.   In this case, the action taken by the Defendants in suing, removing, stopping the payment of legal representation for the zoning board members and then declaring the variance illegal cause financial harm to Plaintiffs.   Further that that harm is a result of an executed policy statement, ordinance, regulation or decision officially adopted and  authorized by that body's officers or the result of that entity's  customs; which in this case is the lawsuit filed to rescind the variances granted.   In this case, Defendants acted upon the citizen's racially motivated threat immediately, with no time to ask the zoning board to review its' decision and allow Plaintiffs an opportunity to respond.   (See Exhibit "I")

Accordingly,  Plaintiffs have filed a lawsuit in conformity with Section 1983 of Title 42 of the United States Code.

## II.    Plaintiffs suffered injuries  pursuant to 42 U.S.C. Section 1983 as it applies to the Mayor of the City of Port Neches, Mayor Glen Johnson

The facts of the case are simple and not in dispute:

Plaintiffs were granted a zoning variance that was sought due to address the utility easements on the property.  The easements allowed the construction of a third story to the complex thus increasing the number of units allowed per building to 140 units on the land already zoned for multifamily use.    The Plaintiffs complied with the requests of the zoning board and thus the variances were granted. The notice of the approved variances was heard on November 9, 2015, wherein Plaintiffs were assaulted by a citizen who attended the meeting and made a threat that he knew Mayor Johnson and would call him to stop the construction as they did not want Pakistanis and Muslims in their city.  (See Exhibit "F") On November 19, 2015, merely 10 days later, a lawsuit was filed against the zoning board to rescind these variances.    The City of Port Neches paying for the zoning board's legal representation.  Shortly after the lawsuit was filed,   the members of the zoning board who were sued were removed from the board either through non-renewal of their commission or other avenues   (See Exhibits "A" through "E")    The attorney representing the zoning board was rightfully paid for by the City of Port Neches.  The City then at some time during the litigation stopped paying the attorney's fees for the zoning board's attorney, leaving the board members without legal. (See Exhibits "A" through "E")        It was after they had no

representation that a Motion for Summary Judgment was filed, taken and turned into a Judgment declaring the variances illegal. All taken without notice to the zoning board members and while they stated that they had no legal representation, in violation of not only the zoning board members rights but also Plaintiffs. (See Exhibits "A" through "E")

At no time did the Mayor or City Council go to the zoning board to discuss the Plaintiff's variances, reasons for granting the variances, or request the zoning board to review their decisions. (See Exhibits "A" through "E") Further, Plaintiffs attempted to intervene as they were the parties that would suffer directly as a result of the requests of the Defendants, but Defendants fought against their intervention and as a result they were precluded from taking at city council meetings regarding the variances and further not allowed to join into the case. Through the direct actions of the Defendants, Plaintiffs suffered injuries in the rescission of their granted variances.

In _Gomez v Toledo_, 446 US 635, 638 (1980), the United States Supreme Court determined that only two elements _must be pled_ to properly assert a cause of action under 42 USC §1983, of which Plaintiffs have pled. First, the Plaintiff must specifically identify the constitutional right of which he or she was deprived. _Id_. at 640. Second, the Plaintiff must assert that "_the person who deprived him of that federal right acted under color of state or territorial law_." Plaintiffs have clearly shown through the facts in both the First Amended and Second Amended Petitioner's the actions that Mayor Glenn Johnson and the City of Port Neches took after the racial threat was made to Defendants. A threat was made on November 9, 2019 after a meeting regarding the approved variances for Plaintiffs, that Defendant Mayor Glenn Johnson would be called to stop the variances as they did not want

Pakistanis and Muslims in Port Neches.   (See Exhibits "A" "C" and "F")    Then a mere ten (10) days later, a Petition was filed against the zoning board to have the variance rescinded. (See Exhibits "A" and "C")   The Defendants at no time contacted the Zoning Board to review the variances, nor did they give the board a chance to alter or rescind the variances.   At absolutely no time did the Defendants approach the Plaintiffs who suffered a direct financial impact from the decision to sue the zoning board.   To add to the discrimination, the members of the zoning board who granted the variances were not reaffirmed in their positions and were forced off their positions on the board.   After these actions were taken, the attorney representing the zoning board members was no longer being paid for by the City, leaving the board without representation when the final judgment declaring the variance illegal was taken.     All of the above was done while positively excluding the Plaintiffs from participating and voicing their concerns.     The violation of the Plaintiffs right to due process were clearly violated as the Defendants acted under the Texas Statutes allowing them to sue the zoning board for rescission of the variances granted to Plaintiffs.

In regard to the applicability of the 1st Amendment claims against the Mayor and City of Port Neches; it is clearly applicable.   The Court in _Garcetti v. Ceballos_, 547 U.S. 410 (2006) held that statements public employees make _as part of their official duties_ are not afforded unlimited protection and immunity.   Accordingly, the 1st Amendment did apply to the cause of action as the employee, state employee, did not speak as a citizen on a matter of public concern.   In analyzing the facts of the _Ceballlos_ case, the Court found that the controlling fact is whether the plaintiff's expressions were made pursuant to his duties as a prosecutor.

In *Ceballlos,* the plaintiff "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case" meant that he was not speaking as a citizen for First Amendment purposes. The Court continued by holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." As in this case, when the Defendants acted upon the threat made to stop the construction and the granting of the variances. The Defendants immediately file a lawsuit to rescind the variance, blocked access to the lawsuit by the Plaintiffs and took a judgment when the zoning board members were not represented by counsel and had no knowledge of the lawsuit. Further, the Defendants did not inquire as the variances from the zoning board members, but rather went to court to have it declared to be illegal and not for the purposes set forth in the City Code allowing the variances. The claim is that it was for financial reason, but the City actually had no knowledge as they never asked. (See Exhibit "I")

The more recent case of <u>Lane v. Franks</u>, 573 U.S. ___ (2014), in examining whether a governmental employee's actions were protected under the 1st Amendment as a private citizen or not protected. If his testimony was as a governmental employee then there was no protection under the First Amendment. In this case, the actions of the Defendants were in their capacity as public officials and therefore provided no immunity. The lawsuit to have the variances rescinded were clearly filed in their capacity. The claims in this action are that the Defendants acted upon the threats made by a citizen which were racially biased. The further actions of the Defendants show the bias against the Plaintiffs. There was no

investigation by the Defendants into the process, basis or foundation in accepting the variance requests by the zoning board.   Since the creation of the zoning board, there were no other granted variances in which the Defendants sought to overturn through filing a lawsuit against the zoning board.  (See Exhibits "A" through "F")   The only time that the Defendants sought to have a variance rescinded was after a threat was made based upon the discriminatory remarks of a citizen that "they did not want Pakistanis and Muslims in their community".   Which begs the question, if they had a different nationality, would this have happened?

Plaintiffs have proven that Defendants, jointly and/or severally, deprived Plaintiffs' of their Fifth Amendment rights, and those rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the Constitution as incorporated and applied to the states through the Fourteenth amendment, Defendants violated Plaintiffs' rights in the following ways:

a.     By Defendants reversing a variance approval of the Port Neches Zoning Board and not investigating or even questioning the zoning board about the variances prior to filing the lawsuit.  Plaintiffs' rights were violated by the Defendants suing the Port Neches Zoning Board, forcing them to reverse the decision the City Manager, City Council and Mayor knew of prior to it being approved and then to seek to have the variance rescinded, and going one step further to have it declared  "illegal" after threats were made to Plaintiffs that the Mayor

would do just what he did because "they did not want their kind", all while excluding the Plaintiffs from the County Court proceedings.

b.     By failing to protect the rights of Plaintiffs against discrimination by threats of others regarding to rescind the variance based upon religious and ethnic origin discrimination and then rescinding the variance based upon religious discrimination.

c.     By failing to protect the rights of Plaintiffs and rejection a second variance request that does not ask for additional stories but only additional units without any foundation or basis for the denial. All costing Plaintiffs money and affecting their reputation in the community.

Plaintiffs clearly had the right to the use of the property purchased for multifamily use.  There is no argument or question that they could build on this land without approval. Plaintiffs, due to the utility easements, were facing a hardship on building on the property. When approaching the Zoning Board in regard to the variances, the board require _additional_ changes to grant the variances which were not requested by required to construct their project.  (See Exhibits "A" through "I")   The Plaintiffs clearly have the right to pursue the use of the property according to the zoning of the property as multifamily.   The variances were rejected by the court all while the Plaintiffs who were the parties who were directly impacted by the recession.   There is nothing to show that the zoning board members had representation at the time of the entry of the summary judgment and declaration that the variance was illegal.  There is also  no notice of the pending motions in the county court

case showing that the zoning board member knew of what was happening so that they could properly defend the motions.  (See Exhibits "A" and "C")

The pattern of deceit and manipulations of the Defendants from the initial filing of the lawsuit against the zoning board to the entry of the final judgment, along with the intentional blocking of allowing Plaintiffs to participate in the actions which directly affected them is clear evidence of the discrimination complained of by Plaintiffs.

### III.    The Defendants violated Plaintiffs' Right to Due Process

The City of Port Neches is also liable under 42 U.S.C. § 1983 for discrimination. Discrimination need not be in direct words but can come about due to the threats and subsequent actions of the Defendants.    Complaints were apparently made based upon Plaintiffs' religion and ethnicity.  Less then ten (10) days thereafter a lawsuit was filed against the zoning board, forcing their removal.

Additionally, municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to policy, procedure, practice, or custom of the municipality.   Even if the City's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy.  See _Bd. Of County Commr's of Bryan County v. Brown_, 520 U.S. 397, 404(1997).   There were no other variances of the hundreds if not thousands of variances that were granted by the zoning board that were declared "illegal" through the suing of the zoning board of variance by the City of Port Neches.   The City went one step further after the threats were made in holding emergency meetings and not allowing Plaintiffs' to participate and then filing a lawsuit against the zoning board, removing the

zoning board members from their positions and ultimately having the grievances declared illegal.  In the present case, the City's formal and informal actions in overlooking, hiding and/or tacitly encouraging the City Council and The Mayor's misconduct through filing lawsuits to remove the zoning board and have the variances granted to Plaintiffs declared "illegal" were discriminatory in the very nature of the action as no other variance has been attacked in this way.   These actions cause financial harm to the Plaintiffs who have been unable to construct their apartment complex as not only the first two variances were denied, but the third variance requesting additional units in the building was also denied without any cause.

Thus, the City's/City Council's failure to check the actions of the filing the lawsuit is a direct cause of the rescission of the granted variance, caused the Plaintiffs' financial damage and harm.     Plaintiffs were deprived of their constitutional rights of due process under the Fifth and Fourteenth Amendments to the United States Constitution and the Texas Constitution as applied through 42 U.S.C. Section 1983.  They were notified of the writ of Certiorari but denied the right to participate to protect their interest which was solely impacted by the judgment declaring the variances illegal.     Further the zoning board members were not reappointed by the City Counsel and all members were subsequently voted off the board.  The attorney paid for by the City notified the zoning board members she was no longer representing them, leaving them without representation, no knowledge of the pending lawsuit or outcome.

Pursuant to United States Code Section 1983, Title 42, makes all persons, councilmembers included, personally liable for damages if their acts result in depriving

others of their civil rights, regardless of whether such acts were reasonable and made in good faith.     Additionally,  Section 1983 does not require proof that a Defendants deliberately intended to deprive the Plaintiffs of their legal rights; the mere deprivation is itself a violation. In *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978), The City of Port Neches, as well as the City Council, can be held liable under Section 1983 as Plaintiffs can demonstrate that a deprivation of a federal right occurred as a result of a "policy" of the local government's legislative body or of those local officials whose acts may fairly be said to be those of the municipality.

## VI.  PRAYER

Plaintiffs pray that the Motion for FRCP 56 Motion for Summary Judgment be granted for the reasons stated herein, and for whatever further the Court deems just and proper in the premises.


Respectfully submitted,

**COLLEEN M. McCLURE**
**ATTORNEY AT LAW**


By:  */s/Colleen M. McClure*
COLLEEN M. MCCLURE
Texas bar No. 24012121
4201 Cypress Creek Parkway, Suite 565
Houston, Texas, 77068
Tel. (281) 440-1625
Fax. (281) 946-5627
colleen.mcclure@att.net

**ATTORNEY FOR PLAINTIFFS**

*FRCP 56 Motion for Judgment*

## CERTIFICATE OF SERVICE

I certify that June 18, 2019 a true and correct copy of the above response to Defendants motion was served to opposing counsel by efiling.

*/s/ Colleen M. McClure*

Colleen M. McClure

Counsel for Defendants:
Frank D. Calvert
Texas Bar No. 03667700
2615 Calder Avenue, Suite 1070
Beaumont, Texas 77702
Tel. (409) 832-8885
fcalvert@calvert-eaves.com
F. Blair Clark
Texas Bar No. 04316560
fbclarke@calvert-eaves.com
Lance P Bradley
Texas State Bar No.: 02826650
lbradley@bradlaw.net
Glenn H. Steele, Jr.
Texas Bar No. 19099800
pstelle@bradlawnet
Bradley, Steele & Pierce,LLP
3120 Central Mall Drive
Port Arthur, Texas 77642
Tel: 409-724-6644
Fax: 409-724-7585